**EXHIBIT A**

## NOTE

$ 162,500 00                                                         Bensalem, PA

**PROPERTY ADDRESS** 1736 W Atlantic Street, Philadelphia, PA 19140

### DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Note and/or the corresponding Loan Documents are defined below

(A)  "Borrower" is ELS DYNAMIC CONSULTING LLC  Borrower is the  Mortgagor under the Mortgage

(B)  "Lender" is Amres Corporation  Lender is a Corporation, organized and existing under the laws of Pennsylvania  Lender's address is 1 Neshaminy Interplex Dr , Suite 310, Trevose, PA 19053  Lender is the  Mortgagee under the Mortgage

(C)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Mortgage

(D)  "Loan Documents" means collectively the Loan Agreement, Note, Mortgage and all other documents executed and/or delivered in connection with the Loan

(E)  "Note" means this promissory note signed by Borrower and dated November 12th, 2021  This Note states that Borrower owes Lender One Hundred Sixty Two Thousand Five Hundred and 00/100 Dollars (U S  $162,500 00) plus interest  Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than December 1st, 2051 (the "Maturity Date")

1    BORROWER'S PROMISE TO PAY

   In return for a loan that I have received, I promise to pay U S  $162,500 00 (this amount is called "Principal"), plus interest, to the order of the lender ("Lender")  The Lender is Amres Corporation, its successors and assigns, located at 1 Neshaminy Interplex Dr , Suite 310, Trevose, PA 19053  I will make all payments under this Note in the form of cash, check or money order

   I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

2    INTEREST

   Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a yearly rate of 7 000%, computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months  Interest commences on the day the lender's funds are placed in escrow  I will pay interest on the full amount of the unpaid principal of this Note even though the Lender may hold some of my cash or other property as collateral for repayment and even if I have prepaid payments in accordance with paragraph 3(A)

The interest rate required by this Section 2 is the rate I will pay before any default  If I default, the above rate shall, at the option of Lender without notice, increase by five percentage points or the maximum permitted under law and remain at that rate until all defaults are fully cured

3    PAYMENTS

(A)    Time and Place of Payments

I will pay all interest on this Note from the date of funding through the end of that month at loan closing  Thereafter I will make monthly payments on the first day of each month during the term of this Note starting with the "First Payment Date" of January 1st, 2022   If, on December 1st, 2051, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments payable to Amres Corporation at 1 Neshaminy Interplex Dr , Suite 310, Trevose, PA 19053 or at a different place if required by the Note Holder I agree to accept payment billings by email

If I have prepaid payments when the loan was funded, Lender may retain those payments as earned in full and it will note in its records that the period covered by the prepaid payments has been paid as agreed  Prepaid payments shall not be applied to principal  If I repay the loan within this period, any unused prepaid funds will be credited on the payoff

(B)    Amount of Monthly Payments

My monthly principal and interest payment will be in the amount of U S  $ 1,081 12

(C)    Application of Payments

My payments under this Note will be applied first to any interest then due, next to late or other charges due and finally to unpaid principal  A payment will be deemed made when received at the payment address in subparagraph (A) above or at such other payment address as the Note Holder may designate from time to time

4    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment "  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount under the Note  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes

A Prepayment may carry a charge, which will be calculated in accordance with the following schedule

For notes with a thirty-year (360) month term  If within (36) months following the date the loan was made I make a Prepayment, I will pay a Prepayment charge in an amount not to exceed any of the following amounts

FIVE percent 5 00% of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the first twelve-month period immediately following the date the loan was made,

FIVE percent 5 00% of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the second twelve-month period immediately following the date the loan was made,

FIVE percent 5 00% of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the third twelve-month period immediately following the date the loan was made

## 5    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then   (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me   The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me   If a refund reduces Principal, the reduction will be treated as a partial Prepayment

## 6    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of five (5) calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be ten percent (10%) of my overdue payment of principal and interest or one-hundred dollars ($100), whichever is more  Additionally, I will continue to pay daily late charges of $17 00 until the full payment is made and I agree that such charge is a reasonable estimate of the fair compensation for the loss and damages that Note Holder will suffer for such late payment  I will pay this late charge promptly

(B)     Default

If I do not pay the full amount of each monthly payment on the date it is due or the amount due on the Maturity Date, I will be in default

(C)     Notice of Default

If I am in default and such default is then continuing, the full amount of Principal which has not been paid, any accrued interest, all other amounts payable under this Note and any other Loan Documents, shall at once become due and payable, at the option of the Note Holder, without any prior notice to me (except if notice is required by applicable law, then after such notice)

(D)     No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(E)     Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law   Those expenses include, for example, reasonable attorneys' fees, inspection fees, appraisal fees, returned check fees and other out of pocket costs

7      RESERVE ACCOUNT

On the Effective Date, Borrower shall deposit into an escrow account established and held by the Lender, the amount of $0 00 ("Reserve"), which Reserve shall be held by Lender as additional cash collateral for Loan  So long as no Event of Default has occurred and is continuing, on the first day of each month commencing on January 1st, 2022 and continuing until the Maturity Date, Lender shall (i) advance from the Reserve an amount equal to the lesser of (a) $1,081 12 and (b) the remaining balance of the Reserve, and (ii) apply such amount to the Monthly Payment due  Notwithstanding the foregoing, (y) upon the occurrence of an Event of Default (as defined below), Lender shall apply amounts on deposit in the Reserve to the outstanding principal balance of the Loan, and (z) if the Loan is prepaid in full prior to the initial Maturity Date, all amounts in the Reserve shall be applied to the outstanding principal balance of the Loan

8      GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at 1610 Juniper Avenue, Elkins Park, PA 19027 United States or at a different address if I give the Note Holder a notice of my different address

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

9    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things   Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note The Note Holder may enforce its rights under this Note against each person individually or against all of us together   This means that any one of us may be required to pay all of the amounts owed under this Note

10    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment, Notice of Dishonor and Protest   "Presentment" means the right to require the Note Holder to demand payment of amounts due   "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid "Protest" means the right to obtain an official certification of nonpayment

I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER    I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER

I further acknowledge that prepayment of this Note may result in Note Holder's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits    I, therefore, agree to pay the Prepayment Premium as described above, if any Principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the property securing the loan giving the Note Holder the right to accelerate the maturity of this Note as provided in the Security Instrument (defined below))

| _____ | _____ | _____ | _____ |
| Borrower's Initials | Borrower's Initials | Borrower's Initials | Borrower's Initials |

11    SECURED NOTE

In addition to the protections given to the Note Holder under this Note, this Note is secured by a Mortgage against real property (the "Security Instrument"), dated the same date as this Note   The Security Instrument protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note, and in the event of default by me under this Note, the Security Instrument or other loan documents, Note Holder may have the right to exercise certain remedies including, without limitation, foreclosure or my interest in such real property, pursuant to the terms of such Security Instrument   That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note   Some of those conditions are described as follows

If all or any part of the subject property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), or a lien or encumbrance is created upon such property, voluntarily or involuntarily, or if Borrower shall file or have filed against it/or the property any proceeding for relief of debtors under the United States Bankruptcy Code, in each case without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Mortgage If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower

If Note Holder exercises this option, Note Holder shall give Borrower notice of acceleration The notice shall provide a period of not less than ten (10) days from the date the notice is given in accordance with Section 12 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

## 12   INDEMNIFIED TAXES

Any payments by me or on account of any of my obligations under any Loan Document shall be made without deduction or withholding for any tax, provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the sum payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made, provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Note Holder I shall promptly indemnify Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses I shall promptly deliver evidence satisfactory to Note Holder of any payments made pursuant to this Section 11 I shall also pay all documentary, recording, filing or similar taxes that arise with respect to this Loan Document

13    USE OF NOTE PROCEEDS

I, the Borrower, represent to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C F R  Parts 221 and 224

14    LOAN AGREEMENT

The loan evidenced by this Note is subject to a Loan Agreement dated November 12th, 2021 ("Loan Agreement"), the terms of which are incorporated herein by this reference

15    CHOICE OF LAW

Pennsylvania law shall exclusively govern the interpretation and enforcement of this Note

NOTICE TO BORROWER   DO NOT SIGN IF IT CONTAINS BLANK SPACES   ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN

THIS NOTE PROVIDES FOR A BALLOON PAYMENT WHICH WILL BE DUE ON THE DATE SPECIFIED IN PARAGRAPH 3 ABOVE, WHETHER OR <u>NOT</u> YOU HAVE OBTAINED A LOAN TO REPAY THIS LOAN   YOU MAY NOT RELY UPON ANY VERBAL ASSURANCES OR AGREEMENTS BY ANY PERSONNEL OF NOTE HOLDER OR ANY MORTGAGE BROKER THAT THEY HAVE OR WILL OBTAIN OR ARRANGE A REPLACEMENT LOAN FOR YOU   OBTAINING A REPLACEMENT LOAN IS <u>YOUR</u> RESPONSIBILITY

16    STATE SPECIFIC PROVISIONS

Not Applicable

17    TIME

Time is of the essence in this Note

18    CROSS-DEFAULT

You agree that if you default under any promissory note or mortgage you give us, we may consider and declare you to be in default under all unpaid notes and mortgages you have given us

## 19    CONFESSION OF JUDGMENT

BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE STATE OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, AS OF ANY TERM, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE, ALL ACCRUED INTEREST,  LATE CHARGES, AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE TOGETHER WITH INTEREST ON SUCH AMOUNT, TOGETHER WITH COSTS OF SUIT, AND COLLECTION FEES OF FIFTEEN PERCENT (15%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, OR IF GREATER THE SUM OF $250 00 PER HOUR FOR EACH HOUR OF TIME SPENT BY LENDER, EMPLOYEES OF LENDER OR PROFESSIONALS EMPLOYED BY LENDER BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY, AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT   THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIME UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE   BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE   EACH BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE

[SIGNATURE PAGE FOLLOWS]

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

**BORROWER**
ELS DYNAMIC CONSULTING LLC
a Limited Liability Company

By _____          By _____
Name  Edward L Spann IV               Name _____
Title   Member                        Title _____

Borrower's Notice Address             Borrower's Notice Address
1610 Juniper Avenue, Elkins Park, PA
19027 United States

By _____          By _____
Name _____          Name _____
Title _____          Title _____

Borrower's Notice Address             Borrower's Notice Address


[Sign Original Only]

Property Address  1736 W Atlantic Street, Philadelphia, PA 19140

## NOTE ALLONGE

**Loan Number**

**Loan Date**        November 12, 2021

**Borrowers.**       **ELS Dynamıc Consultıng LLC**

**Property Address**    **1736 W Atlantıc Street, Phıladelphıa, PA 19140**

**Note Amount**      $162,500 00

**PAY TO THE ORDER OF**

**Wıthout Recourse**

AMRES CORPORATION

BY _Flora Friedman_      TITLE· _Post Closer_

_Flora Friedman_

**EXHIBIT B**

## GUARANTY

PROPERTY ADDRESS: 1736 W Atlantic Street, Philadelphia, PA 19140

This GUARANTY dated as of November 12th, 2021 (this "Guaranty"), is made by Edward L Spann IV, an individual resident of the state of Pennsylvania ("Guarantor"), in favor of Amres Corporation, a Pennsylvania Corporation, as lender under the Note (as defined below) (together with its permitted successors and assigns, collectively, "Lender").

## WITNESSETH:

WHEREAS, Lender is making a loan to ELS DYNAMIC CONSULTING LLC, a Pennsylvania Limited Liability Company ("Borrower") in the original principal amount of One Hundred Sixty Two Thousand Five Hundred and 00/100 Dollars ($162,500.00) (the "Loan") as evidenced by (i) that certain promissory note dated the date hereof, executed by Borrower and made payable to the order of Lender in the amount of the Loan (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note") and (ii) that certain Mortgage dated the date hereof, by Borrower in favor of Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Mortgage"). The Note and the Mortgage, together with all riders thereto and related certificates and ancillary documents, are collectively referred to herein as the "Loan Documents".

WHEREAS, pursuant to the Mortgage, Borrower's obligations under the Loan Documents will be secured by, among other things, the real property described in the Mortgage.

WHEREAS, Guarantor is a direct or indirect owner of an equity interest in Borrower, and accordingly will derive material direct and indirect financial and other benefits from the transactions contemplated by the Note and the other Loan Documents.

WHEREAS, to induce Lender to make the Loan, Guarantor has agreed to execute and deliver this Guaranty.

NOW, THEREFORE, in consideration of the covenants set forth in this Guaranty, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree, represent and warrant as follows;

## ARTICLE I

## NATURE AND SCOPE OF GUARANTY

Section 1.1 Guaranty of Obligation. Guarantor hereby irrevocably and unconditionally guarantees the due and prompt payment and performance in full when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of the following (the "Guaranteed Obligations"):

(a)   the principal of, interest on, and all other amounts due at any time under the Note or any other Loan Document, including prepayment penalties, late payment charges, interest charged at the default rate (if applicable), and accrued interest as provided in the Loan Documents (including interest that may accrue during the pendency of any proceeding under Bankruptcy Laws as described below), advances, costs and expenses to perform the obligations of Borrower or to protect the subject property or the security of the Mortgage;

(b)   all other covenants, agreements, liabilities, obligations (including indemnity obligations and any other monetary obligations) of Borrower under the Loan Documents; and

(c)   all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any default under the Loan Documents or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding or any judicial or non judicial foreclosure proceeding or other exercise by Lender of its rights and remedies under any Loan Document or any transfer in lieu of foreclosure (a " Foreclosure Event"), including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event, to the extent permitted by law.

Without limiting the generality of the foregoing, Guarantor's liability shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by Borrower to Lender under the Loan Documents but for the fact that they are unenforceable or not allowable due to the existence of a proceeding under Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as the same may be amended from time to time, and any successor statute or statutes and all rules and regulations from time to time promulgated thereunder, and any comparable foreign laws relating to bankruptcy, insolvency or creditors' rights or any other Federal or state bankruptcy or insolvency law (collectively, "Bankruptcy Laws").

Section 1.2  Nature of Guaranty.   Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor.  This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance and not merely a guaranty of collection.  This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor.  If Guarantor is a married person, and the state of residence of Guarantor or Guarantor's spouse is a community property jurisdiction, Guarantor agrees that Lender may satisfy Guarantor's obligations under this Guaranty to the extent of all of Guarantor's separate property and Guarantor's interest in any community property.

Section 1.3  Survival of Guaranty.   This Guaranty is a continuing guaranty and shall remain in full force and effect until the repayment and performance in full of the Guaranteed Obligations (subject to Section 1.8).  The obligations of Guarantor under this Guaranty shall survive any Foreclosure Event, and any release or reconveyance of the Mortgage or any release of any other security or guaranty for the Loan.

Section 1.4 <u>Obligations Unsecured</u>.  The obligations of Guarantor under this Guaranty shall not be secured by the Mortgage or the other Loan Documents and shall not be obligations of Borrower notwithstanding anything to the contrary in any other Loan Document.

Section 1.5 <u>Payment By Guarantor</u>.  If all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth in such demand.  Such demand(s) may be made at any time coincident with or after the time for payment of the Guaranteed Obligations.

Section 1.6 <u>No Duty To Pursue Others</u>.  It shall not be necessary for Lender (and Guarantor hereby waives any rights which it may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (a) make any demand upon or institute suit or exhaust its remedies against Borrower or others liable for amounts due under the Guaranteed Obligations or any other person or entity, (b) institute suit or exhaust its remedies with respect to the Guaranteed Obligations or any person or entity, (c) enforce Lender's rights against any collateral which shall ever have been given to secure any of the Guaranteed Obligations, (d) enforce Lender's rights against any other guarantor of the Guaranteed Obligations, (e) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty or (f) resort to any other means of obtaining payment of the Guaranteed Obligations.  Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

Section 1.7 <u>Payment of Expenses</u>.  Guarantor shall, immediately upon demand by Lender, pay all reasonable costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder and any and all damages, losses, claims, liabilities and related reasonable costs and out-of-pocket expenses, including court costs and attorneys' fees, disbursements, costs and expenses incurred by Lender arising from any breach or failure to timely perform any provisions of this Guaranty by Guarantor.

Section 1.8 <u>Reinstatement</u>.  In the event that, pursuant to any controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions (collectively, "<u>Applicable Law</u>"), including any Bankruptcy Law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations (including pursuant to any settlement entered into by Lender in its discretion), or if Lender elects to do so upon the advice of its counsel, then all obligations under this Guaranty in respect of such payment shall automatically be reinstated as though such payment had been due but not made and shall remain in full force and effect and any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect.  It is the intention of Lender and Guarantor that Guarantor's obligations hereunder shall not be discharged except by its performance of such obligations and then only to the extent of such performance.

ARTICLE 2

EVENTS AND CIRCUMSTANCES NOT REDUCING OR
DISCHARGING GUARANTOR'S OBLIGATIONS

Section 2.1  Events and Circumstances. Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including rights to notice) that Guarantor might otherwise have as a result of or in connection with any of the following:

(a)  Modifications. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Loan Documents, or any other document, instrument, contract or understanding between Borrower or Guarantor and Lender, or any other person or entity, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

(b)  Adjustment. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

(c)  Financial Condition. The commencement, filing or continuation of any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshaling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other person or entity, or any of their respective property or creditors or any action taken by any trustee or receiver or by any court in such proceeding; or the making of a general assignment for the benefit of creditors by Borrower, Guarantor or any other person or entity; or any sale, lease or transfer of any or all of the assets of Borrower, Guarantor or any other person or entity.

(d)  Invalidity of Guaranteed Obligations. The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including the fact that (a) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by law, (b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially unenforceable or uncollectible from Borrower, other than payment and performance in full of the Guaranteed Obligations, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or that was executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other person or entity be found not liable on the Guaranteed Obligations or any part thereof for any reason.

(e)  Release of Liability.  Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other person or entity now or hereafter liable therefor, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being acknowledged and agreed by Guarantor that (a) Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of Borrower or any other person or entity and (b) Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that any other person or entity will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to any other person or entity to pay or perform the Guaranteed Obligations.

(f)  Other Collateral.   The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

(g) Release of Collateral.  Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations, or any failure to perfect a lien in any collateral.

(h)  Care and Diligence.  The failure of Lender or any other person or entity to exercise diligence or reasonable care in the enforcement of its rights under the Loan Documents or the preservation, protection, enforcement, sale or other handling or treatment of all or any part of any collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the enforcement or collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

(i)  Unenforceability.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being acknowledged and agreed by Guarantor that it is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations or the priority of any security interest or lien therein.

(j)  Offset.  Any existing or future offset, claim or defense of Borrower, Guarantor or any other person or entity, against Lender, Borrower or any other person or entity or against payment or performance of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise, other than the payment and performance of the Guaranteed Obligations in full.

(k) Compliance with Loan Documents. Any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Guaranteed Obligations or Lender to conform or comply with any term of any of the Loan Documents.

(l) Corporate Events. The reorganization, merger or consolidation of Borrower into or with any other person or entity; or any dissolution of Borrower or any other entity; or any changes in the shareholders, partners or members of Borrower or any other person or entity; or any reorganization of Borrower or any other person or entity; or any other change in the relationship between Borrower, Guarantor or any other guarantor of the Guaranteed Obligations, or any termination of such relationship.

(m) Preference. Any payment by Guarantor to Lender that is held to constitute a preference under Bankruptcy Laws, or for any reason Lender is required to refund such payment or pay such amount to any other person or entity.

(n) Other Actions Taken or Omitted. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or any other person or entity or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof.

It is the unambiguous and unequivocal intention of Guarantor that it shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or not contemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and performance of the Guaranteed Obligations.

## ARTICLE 3

## GUARANTOR WAIVERS

Section 3.1 Waiver of Applicable Laws. Guarantor hereby irrevocably waives the benefit of all principles and provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor) and the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors.

Section 3.2 Waiver of Notice. Guarantor hereby waives all notices with respect to the Loan Documents and this Guaranty that may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of (a) any loan or other indebtedness of Borrower, (b) acceptance of this Guaranty, (c) the execution and delivery by Borrower of any documents or instruments relating to the Loan or in connection with the subject property or any collateral, (d) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (e) the occurrence of any default under the Loan Documents, (f) dishonor, (g) notice of intent to accelerate, notice of acceleration, (h) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral under the Loan Documents, (i) protest, proof

of non-payment or default by Borrower or any other guarantor of the Guaranteed Obligations and (j) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty or the other Loan Documents.

Section 3.3 Changes in the Guaranteed Obligations. At any time or from time to time and any number of times, without notice to Guarantor and without releasing, discharging or affecting the liability of Guarantor hereunder: (a) the time for payment of the principal of, interest on or other amounts payable under the Loan may be extended or the Loan may be renewed in whole or in part; (b) the rate of interest on or period of amortization of the Loan or the amount of the monthly principal payments payable under the Loan Documents may be modified; (c) the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (d) the maturity of the Loan may be accelerated as provided in the Loan Documents; (e) any or all payments due under the Loan Documents may be reduced; (f) any Loan Document may be modified or amended by Lender and Borrower in any respect, including an increase in the principal amount of the Loan; (g) any amounts held under the Loan Documents may be released; (h) the payment of the principal of, interest on or other amounts payable under Loan or any security for the Loan, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower; (i) any payments made by Borrower to Lender may be applied to the principal of, interest on or other amounts payable under the Loan in such order and priority as Lender determines; (j) Lender may foreclose on any collateral securing the Loan by one or more judicial or non-judicial sales, accept an assignment of any such collateral in lieu of foreclosure; and (k) any other terms of the Loan Documents may be modified as required by Lender.

## ARTICLE 4

### REPRESENTATIONS AND WARRANTIES

Section 4.1 Representations and Warranties. To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as of the date hereof as follows:

(a) This Guaranty constitutes a legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with its terms, subject only to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(b) The execution, delivery and performance of this Guaranty by Guarantor (i) will not result in any violation of the provisions of any Applicable Laws, (ii) will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under the terms of any indenture, mortgage, deed of trust, deed to secure debt, loan agreement, management agreement or other agreement or instrument to which Guarantor is a party or to which any of Guarantor's property or assets is subject, and (iii) will not result in or require the creation or imposition of any lien upon or with respect to any of the assets of Guarantor.

(c) Any consent, approval, authorization, order, registration or qualification of or with a governmental authority or other person or entity required for the execution, delivery and performance by Guarantor of this Guaranty has been obtained and is in full force and effect.

(d) Guarantor is an affiliate of Borrower, is the owner of a direct or indirect equity interest in Borrower, and has received, or will receive, direct and indirect material financial and other benefits from the making of this Guaranty.

(e) Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Guaranteed Obligations; provided, however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

(f) Neither Lender nor any of its representatives has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty and Guarantor has not relied on Lender for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or otherwise relied on Lender in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

(g) Guarantor has received a copy of each of the Loan Documents and this Guaranty. Guarantor has read this Guaranty and each of the other Loan Documents and understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents. Guarantor understands the risks inherent in such transactions, including the risk of loss of all or any part of the subject property or of the assets of Guarantor. Guarantor has had the opportunity to consult with its legal counsel prior to entering into the Guaranty and Guarantor availed himself or herself of such opportunity to the extent he or she desired.

(h) There are no actions, suits or proceedings at law or in equity by or before any governmental authority, arbitrator or other entity now pending or, to Guarantor's knowledge, threatened against or affecting Guarantor.

(i) Guarantor has (i) not entered into the transaction contemplated by this Guaranty with the actual intent to hinder, delay or defraud any creditor and (ii) received reasonably equivalent value in exchange for its obligations under this Guaranty. After giving effect to this Guaranty, (x) the fair saleable value of Guarantor's assets will exceed its total liabilities, (y) Guarantor's assets will not constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted and (z) Guarantor will be able to pay its liabilities as they mature. In the last ten years, Guarantor has not been the subject of or a party to any pending bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation (each, an "Event of Bankruptcy"). Guarantor is not contemplating an Event of Bankruptcy and to Guarantor's knowledge no other person or entity is contemplating an Event of Bankruptcy in respect of Guarantor.

ARTICLE 5

AGREEMENT TO PAY, SUBROGATION AND SUBORDINATION

Section 5.1    Subordination of All Guarantor Claims.

(a)    Without limiting any other right that Lender has at law or in equity against Guarantor, if Borrower fails to pay any Guaranteed Obligation when and as due, whether at maturity, by acceleration, after notice of prepayment or otherwise, Guarantor agrees to promptly pay the amount of such unpaid Guaranteed Obligations to Lender in cash.  Upon payment by Guarantor of any sums to Lender as provided herein, all of Guarantor's rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against Borrower with respect to such sum shall be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all monetary Guaranteed Obligations.  If any payment shall be paid to Guarantor in violation of the immediately preceding sentence on account of such subrogation, exoneration, contribution, reimbursement, indemnity or similar right, such amount shall be held in trust for the benefit of Lender, segregated from other funds of Guarantor, and promptly paid or delivered to Lender in the same form as so received (with any necessary endorsement or assignment) to be credited against the payment of the Guaranteed Obligations, whether due or to become due, in accordance with the terms of the Loan Documents or to be held as collateral for the Guaranteed Obligations.

(b)    Guarantor hereby subordinates any and all debts, liabilities and obligations owed to it by Borrower (including all rights and claims of Guarantor against Borrower as a result of Guarantor's payment of all or part of the Guaranteed Obligations) (the "Subordinated Obligations") to the Guaranteed Obligations as follows:

(i)    Guarantor shall not accept, demand or take any action to collect any payment on the Subordinated Obligations without the prior written consent of Lender.

(ii)    Guarantor agrees that Lender shall be entitled to receive full payment in cash of all Guaranteed Obligations (including interest accruing during the pendency of any proceeding under Bankruptcy Laws, regardless of whether allowed or allowable in such proceeding ("Post-Petition Interest")) in any proceeding under Bankruptcy Laws against Borrower before Guarantor receives any payment on account of any Subordinated Obligations.

(iii)    After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Guarantor shall collect, enforce and receive payments on the Subordinated Obligations as trustee for Lender and deliver such payments to Lender on account of the Guaranteed Obligations (including Post-Petition Interest), together with any necessary endorsements or other instruments of transfer, without reducing or affecting the liability of Guarantor under this Guaranty in any respect.

(iv)    After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding

against Borrower or Guarantor under Bankruptcy Laws), Lender is authorized and empowered (but not obligated), in its discretion, (x) in the name of Guarantor, to collect and enforce, and to submit claims in respect of, Subordinated Obligations and to apply any amount so received to the Guaranteed Obligations (including Post-Petition Interest), and (y) to require Guarantor (A) to collect and enforce and to submit claims in respect of, Subordinated Obligations and (B) to pay any amounts received on such obligations to Lender for application to the Guaranteed Obligations (including Post-Petition Interest).

Section 5.2 <u>Payments Held in Trust</u>.  In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payments, claims and/or distributions which are prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

Section 5.3 <u>Liens Subordinate</u>.  Guarantor agrees that no liens, security interests, judgment liens, charges or other encumbrances shall exist upon Borrower's assets securing payment of the Subordinated Obligations and any such liens, security interests, judgment liens, charges or other encumbrances which may exist shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, Guarantor shall not (a) exercise or enforce any creditor's right it may have against Borrower, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including the commencement of, or joinder in, any proceeding under Bankruptcy Laws) to enforce any liens, mortgages, deeds of trust, deeds to secure debt, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

## ARTICLE 6

### MISCELLANEOUS

Section 6.1 <u>Waiver; Amendment</u>.  No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right.  The rights of Lender hereunder shall be in addition to all other rights provided by law.  No modification, amendment, extension, discharge, termination or waiver of any provision of this Guaranty, nor consent to any departure by Guarantor or Lender therefrom, shall in any event be effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought, and then any such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given.  No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 6.2  <u>Notices</u>.  All notices given by Guarantor or Lender in connection with this Guaranty must be in writing.  Any notice to Guarantor in connection with this Guaranty shall be deemed to have been given to Guarantor when mailed by first class mail or when actually delivered to Guarantor's notice address if sent by other means.  Guarantor's notice address shall be the address set forth on the signature page hereto unless Guarantor has designated a substitute notice address by notice to Lender.  Guarantor shall promptly notify Lender of Guarantor's change of address.  If Lender specifies a procedure for reporting Guarantor's change of address, then Guarantor shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Guaranty at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated in the Definitions Section of the Note unless Lender has designated another address by notice to Guarantor.  Any notice in connection with this Guaranty shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Guaranty is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Guaranty.

Section 6.3  <u>Governing Law</u>.  This Guaranty shall be governed by federal law and the law of the State of Pennsylvania without regard to the application of choice of law principles that would result in the application of the laws of another jurisdiction.

Section 6.4  <u>Venue</u>.  Guarantor agrees that any controversy arising under or in relation to this Guaranty shall be litigated exclusively in the State of Pennsylvania.  The state and federal courts and authorities with jurisdiction in the State of Pennsylvania shall have exclusive jurisdiction over all controversies that arise under or in relation to this Guaranty or any other Loan Document with respect to the subject matter hereof.  Guarantor irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

Section 6.5  <u>WAIVER OF JURY TRIAL</u>.  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS GUARANTY OR ANY LOAN DOCUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY GUARANTOR, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

Section 6.6  <u>Severability</u>.  Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid pursuant to Applicable Law, but if any provision of this Guaranty shall be prohibited by or invalid pursuant to Applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

Section 6.7  <u>Prior Agreements</u>.  THIS GUARANTY REPRESENTS THE FINAL AGREEMENT OF GUARANTOR WITH RESPECT TO THE SUBJECT MATTER

HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. All prior or contemporaneous agreements, understandings, representations and statements, oral or written, relating to the subject matter hereof are superseded by this Guaranty.

Section 6.8   Defined Terms; Construction.

(a) Capitalized terms used herein without definition shall have the meanings ascribed thereto in the other Loan Documents.

(b) Any reference in this Guaranty to a "Section" shall, unless otherwise explicitly provided, be construed as referring to a Section of this Guaranty.

(c) The Article and Section headings in this Guaranty are included herein for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose.

(d) Any reference in this Guaranty to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(e) Use of the singular in this Guaranty includes the plural and use of the plural includes the singular.

(f) As used in this Guaranty, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(g) Whenever Guarantor's knowledge is implicated in this Guaranty or the phrase "to Guarantor's knowledge" or a similar phrase is used in this Guaranty, Guarantor's knowledge or such phrase(s) shall be interpreted to mean to the best of Guarantor's knowledge after reasonable and diligent inquiry and investigation.

(h) Unless otherwise provided in this Guaranty, if Lender's approval, consent, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, consent, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(i) All references in this Guaranty to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(j) The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

Section 6.9 Recitals. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

Section 6.10 <u>Rights and Remedies</u>.  If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor.  The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

Section 6.11 <u>Taxes</u>.  Any payments by or on account of any obligation of Guarantor under this Guaranty shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with Applicable Law and the sum payable hereunder shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Lender.  Guarantor shall promptly indemnify Lender for all such non -excluded taxes (including interest and additions to tax) and related expenses.  Guarantor shall promptly deliver evidence satisfactory to Lender of any payments made pursuant to this Section 6.11.

Section 6.12 <u>Assignment</u>.  Lender may assign its rights under this Guaranty in whole or in part and, upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of and may be enforced by such assignee to the extent so assigned.  Guarantor may not assign its rights, duties and obligations under this Guaranty, in whole or in part, without Lender's prior written consent, and any such assignment shall be deemed void ab initio.  The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties.

Section 6.13 <u>Time is of the Essence</u>.  Guarantor agrees that, with respect to each and every obligation and covenant contained in this Guaranty, time is of the essence.

Section 6.14 <u>Credit Report</u>.  Guarantor acknowledges and agrees that Lender is authorized, no more frequently than once in any twelve (12) month period, to obtain a credit report (if applicable) on Guarantor, the cost of which shall be paid for by Guarantor.  Guarantor acknowledges and agrees that Lender is authorized to obtain a credit score (if applicable) for Guarantor at any time at Lender's expense.

Section 6.15 <u>State Specific Provisions</u>.  Guarantor and Lender further covenant and agree as follows:

Civil Procedure, as now in effect or as modified or amended in the future. Guarantor's obligations under this Guaranty may be enforced by Lender in an action regardless of whether a trustee's sale is held.

PENNSYLVANIA: This Guaranty constitutes a guaranty and suretyship agreement and Guarantor is executing this Guaranty as both a guarantor and surety.

If the subject property is located in Pennsylvania and this Guaranty is executed by only one spouse:

SPOUSAL ESTOPPEL: The undersigned hereby certifies to Lender that (1) he or she is the spouse of Guarantor, (2) there is no divorce proceeding concerning the undersigned and Guarantor which is currently pending, threatened or anticipated; and (3) the undersigned has no right, claim, title or interest in or to any of the assets or items listed or described on the financial statements of Guarantor dated August 17th, 2021 which were delivered to Lender.


_____

Print Name: _____


Section 6.16   Community Property Provision.

Not applicable.


(No Further Text on This Page)

IN WITNESS WHEREOF, Guarantor has signed and delivered this Guaranty as of the date first written above, under seal (where applicable).  Where Applicable Law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

GUARANTOR:

_____ (SEAL)
Edward L. Spann IV

Address for Notices to Guarantor:
1610 Juniper Avenue, Elkins Park, PA 19027 United States

Guarantor represents and warrants that Guarantor is:

_____ single
_____ married

Guarantor represents and warrants that Guarantor's state of residence is Pennsylvania.

Case 24-13884-djb    Doc 30-2    eFiled 03/06/25 in a Federal PA 03/06/25 03:34:58  Desc
Exhibit 2022 Page 26 of 42 Page 1 of 13    Rec Fee: $226.75
Receipt#: 22-09658
Records Department    Doc Code: M

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

1 Neshaminy Interplex Dr., Suite 310,
Loan Number: ████████



*EXHIBIT C*

(Space Above For Recorder's Use)

MORTGAGE, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Mortgage and/or the corresponding Loan Documents are defined below.

(A      "Borrower" is ELS DYNAMIC CONSULTING LLC. Borrower is the Mortgagor under the Mortgage(s).

(B)      "Lender" is Amres Corporation. Lender is a Corporation, organized and existing under the laws of Pennsylvania. Lender's address is 1 Neshaminy Interplex Dr., Suite 310, Trevose, PA 19053. Lender is the Mortgagee under the Mortgage(s).

(C)      "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Mortgage(s).

(D      "Loan Documents" means collectively the Loan Agreement, Note, Mortgage(s) and all other documents executed and/or delivered in connection with the Loan.

(E)      "Note" means the note signed by Borrower and dated November 12th, 2021. The Note states that Borrower owes Lender One Hundred Sixty Two Thousand Five Hundred and 00/100 Dollars (U.S. $162,500.00) plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than December 1st, 2051 (the "Maturity Date").

This Mortgage, Assignment of Rents and Security Agreement (the "Mortgage") made this 12th day of November, 2021, among ELS DYNAMIC CONSULTING LLC, a Pennsylvania Limited Liability Company, (the "Mortgagor"), whose address is 1610 Juniper Avenue, Elkins Park, PA 19027 United States, and Amres Corporation, a Corporation, as mortgagee (together with its successors and assigns, the "Lender") whose address is 1 Neshaminy Interplex Dr., Suite 310, Trevose, PA 19053.

Witnesseth:

THAT MORTGAGOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO LENDER that property in Philadelphia County, Pennsylvania, described as:

See Legal Description Attached 'Exhibit A' incorporated herein by reference

APN: ███████████

Street Address: <u>1736 W Atlantic Street</u>

     TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Lender by Section 11 of the provisions set forth below to collect and apply such rents, issues and profits.  For the Purpose of Securing:  1.  Performance of each agreement of Mortgagor incorporated by reference or contained herein.  2.  Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension of renewal thereof, in the principal sum of $162,500.00 executed by Mortgagor in favor of Lender or order.  3.  Payment of such further sums as the then record owner of such property hereafter may borrow from Lender, when evidenced by another note (or notes) reciting it is so secured.  4.  All obligations under a Loan Agreement dated November 12th, 2021 between Mortgagor and Lender.

     A default under any other mortgage securing the above-referenced promissory note shall constitute a default under this Mortgage as well.

     To Protect the Security of This Mortgage, Mortgagor Agrees:

     (1) That Mortgagor will observe and perform said provisions; and that the reference to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations and parties set forth in this Mortgage.

     (2) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumeration's herein not excluding the general.

     (3) To provide, maintain and deliver to Lender fire insurance satisfactory to and with loss payable to Lender listed as additional insured, as more particularly set forth in this Mortgage.  The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured herein and in such order as Lender may determine or at option of Lender the entire amount so collected or any part hereof may be released to Mortgagor. Such application or release shall not cure or waive any default or notice of default herein under or invalidate any act done pursuant to such notice.

     (4) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Lender; and to pay all costs and expenses, including cost of

evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Lender may appear, and in any suit brought by Lender to record this Mortgage.

(5) To pay; at least ten (10) days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or a part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Mortgage.

Should Mortgagor fail to make any payment or to do any act as herein provided, then Lender, but without obligation to do and without notice to or demand upon Mortgagor and without releasing Mortgagor from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Lender being authorized to enter upon said property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(6) To pay immediately and without demand all sums so expended by Lender, with interest from date of expenditure at the amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Lender not to exceed the maximum allowed by law at the time when said statement is demanded.

(7) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Lender, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(8) That by accepting payment of any sum secured hereby after its due date, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(9) That at any time or from time to time, without liability therefore and without notice, upon written request of Lender and presentation of this Mortgage and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Lender may; reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(10) That upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Mortgage and said Note to Lender for cancellation and retention and upon payment of its fees, Lender shall reconvey, without warranty, the property held hereunder. The recitals in such RECONVEYANCE of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto". Five years after issuance

of such full RECONVEYANCE, Lender may destroy said Note and this Mortgage (unless directed in such request to retain them).

(11) That as additional security, Mortgagor hereby gives to and confers upon Lender the right, power and authority during the continuance of this Mortgage, to collect the rents, issues and profits of said property, reserving unto Mortgagor the right, prior to any default by Mortgagor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collected and retain such rents, issues and profits as they become due and payable. Upon any such default, Lender may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonable attorney's fees, upon indebtedness secured hereby, and in such order as Lender may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(12) That upon default by Mortgagor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, under the note secured hereby, or under the Loan Agreement, Lender may declare all sums secured hereby immediately due and payable by delivery to Lender of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Lender shall cause to be filed for record.

(13) That this Mortgage applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including pledges of the note secured hereby whether or not named as Lender herein. In this Mortgage, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) Mortgagor shall, at Mortgagor's expense, maintain in force fire and extended coverage insurance in any amount of not less than the full replacement value of any building which may exist on the subject property, with loss payable to Lender. Mortgagor shall provide fire insurance protection on Mortgagor's furniture, fixtures and personal property on the subject real property in an amount equal to the full replacement value thereof, and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Lender. In addition, Mortgagor shall, at Mortgagor's expense, maintain in force policies of liability insurance and, if applicable, flood insurance, with Lender as loss payee and as an additional insured thereunder, insuring Mortgagor against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any property belonging to any person by reason of Lender's interest hereunder or the use and occupancy of the subject real property by Mortgagor. Such insurance shall be in the following amounts: (1) $500,000.00 combined single limit liability insurance covering property damage and bodily injury; (and) (2) flood insurance is required if the collateral is located in a flood zone equal to the replacement cost of the subject real property.

At least thirty (30) days prior to the expiration of a policy, Mortgagor shall deliver to Lender a renewal policy in a form satisfactory to Lender. If Mortgagor obtains any other insurance on the subject real property, such insurance shall name the Lender as additional insured and loss payee thereunder.

(15) If all or any part of the subject property or any interest in it is sold or transferred (or if a beneficial interest in Mortgagor is sold or transferred and Mortgagor is not a natural person), or a lien or encumbrance is created upon such property, voluntarily or involuntarily, or if Mortgagor shall file or have filed against it and/or the property any proceeding for relief of debtors under the United States Bankruptcy Code, in each case without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage. If Lender exercises this option, Lender shall give Mortgagor notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Mortgagor must pay all sums secured by this Mortgage. If Mortgagor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Mortgagor.

(16) Lender may make or cause to be made reasonable entries upon and inspections of the real property securing this Mortgage.

(17) Mortgagor shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the property securing this Mortgage or any part thereof and Mortgagor shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Mortgagor authorizes Lender, at Lender's option, as attorney-in-fact for Mortgagor, to commence, appear in and prosecute, in Lender's or Mortgagor's name, any action or proceeding relating to any condemnation or other taking of the subject property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the subject property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Mortgage is on a leasehold, to the rights of lessor under the ground lease. Mortgagor authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the subject property or to payment of the sums secured by this Mortgage, whether or not then due, in the order of application set forth in Section 3 hereof, with the balance, if any, to Mortgagor. Unless Mortgagor and Lender otherwise agree in writing, any application of proceeds to Principal (as defined in the Note) shall not extend or postpone the due date of the monthly installments referred to in Sections 1 and 2 hereof or change the amount of such installments. Mortgagor agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

(18) This Mortgage is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the subject property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Mortgagor hereby grants Lender a security interest in said items. Mortgagor agrees that Lender may file this Mortgage, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the subject property. Any reproduction of this Mortgage or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Mortgagor agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Mortgage in such form as Lender may require to perfect a security interest with respect to said items. Mortgagor shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Mortgagor shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. For purposes of filing and recording this Mortgage in, among other places, the real estate records of the county in which the subject property is located, the following information is included: (i) the Mortgagor shall be deemed the "Debtor" with the address set forth for the Mortgagor on the first page of this Mortgage which the Mortgagor certifies is accurate, (ii) the Lender shall be deemed to be the "Secured Party" with the address set forth for the Lender on the first page of this Mortgage and shall have all of the rights of a secured party under the Uniform Commercial Code, (iii) this Mortgage covers goods which are or are to become fixtures, (iv) the name of the record owner of the land is Mortgagor, (v) if Mortgagor is an entity, the organizational identification number of Mortgagor is 47-1900486, and the Mortgagor is organized under the laws of the State of Pennsylvania. Upon Mortgagors breach of any covenant, representation, warranty or agreement of Mortgagor contained in this Mortgage, including the covenants to pay when due all sums secured by this Mortgage, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lenders option, may also invoke the remedies provided in this Mortgage as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the subject property separately or together and in any order whatsoever, without in any way affecting the availability of Lenders remedies under the Uniform Commercial Code or of the remedies provided in this Mortgage.

(19) Any default under this Mortgage shall constitute a default under all promissory notes and mortgages Mortgagor has executed in favor of Lender. Mortgagor shall be in default if, during the Loan application process, Mortgagor or any persons or entities acting at the direction of Mortgagor or with Mortgagor's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Mortgagor's use of the subject property solely for business and/or commercial purposes.

(20) <u>State Specific Provisions</u>.

<u>Waivers</u>. Mortgagor, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Mortgage, and hereby waives

the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Reinstatement Period. Mortgagor's time to reinstate shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Mortgage.

Purchase Money Mortgage. If any of the debt secured by this Mortgage is lent to Mortgagor to acquire title to the subject property, this Mortgage shall be a purchase money mortgage.

EFFECT OF SURVIVAL EVENTS. Both before and after any Survival Event, as defined below, Mortgagor shall:

(a)    pay all amounts due for: (i) taxes and assessments and other items which can attain priority over this Mortgage as a lien or encumbrance on the subject property; (ii) leasehold payments or ground rents on the subject property, if any; (iii) premiums for any and all insurance required by Lender under Section 14; and (iv) Mortgage Insurance premiums, if any, or any sums payable by Mortgagor to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with this Mortgage;

(b)    pay the amounts and take the actions required by Section 5 of this Mortgage;

(c)    maintain insurance coverages and take the other actions required by Section 14 of this Mortgage;

(d)    maintain, repair and restore the subject property and take the other actions required by Section 2 of this Mortgage.

(e)    if this Mortgage is on a leasehold, comply with all the provisions of the lease;

(f)    treat any amounts disbursed by Lender under Section 6 of this Mortgage as additional debt of Mortgagor secured by this Mortgage;

(g)    maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is
not available, and take the other actions required by this

(h)    permit the collection and application of miscellaneous proceeds as required by Section 7 and Section 17 of this Mortgage;

(j)    pay all fees required under this Mortgage, the Loan Agreement and/or the Note;

(j)    continue to abide by the restrictions and take the actions required by Section 2 of this Mortgage.

(k)    pay any collection expenses under Section 18 of this Mortgage;

(l)    pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a)    any default described in the Note;

(b)    Lender requiring Mortgagor to pay immediately the full amount of Principal which has not been paid and all the

(c)    Lender requiring immediate payment in full of all sums secured by this Mortgage as described in the Note and Sections 15 or 18 of this Mortgage;

(d)    the Maturity Date as defined in the Note;

(e)    the entry of any judgment against Mortgagor under the Note; and

(f)    the entry of any judgment under this Mortgage.

(21) Pennsylvania law shall exclusively govern the enforcement and interpretation of this Mortgage.

(22) Cross-Default.  You agree that if you default under any promissory note or mortgage you give us, we may consider and declare you to be in default under all unpaid notes and mortgages you have given us.

(23)  <u>CONFESSION OF JUDGMENT</u> BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE STATE OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS MORTGAGE AND WITH OR WITHOUT COMPLAINT FILED, AS OF ANY TERM, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS MORTGAGE. ALL ACCRUED INTEREST, LATE CHARGES, AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS MORTGAGE. TOGETHER WITH INTEREST ON SUCH AMOUNT, TOGETHER WITH COSTS OF SUIT, AND COLLECTION FEES OF FIFTEEN PERCENT (15%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, OR IF GREATER THE SUM OF $250.00 PER HOUR FOR EACH HOUR OF TIME SPENT BY LENDER, EMPLOYEES OF LENDER OR PROFESSIONALS EMPLOYED BY LENDER BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS MORTGAGE OR A COPY OF THIS MORTGAGE, VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS MORTGAGE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIME UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS MORTGAGE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL PRIOR TO SIGNING THIS MORTGAGE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS MORTAGE. EACH BORROWER AGREES TO THE TERMS OF THE MORTGAGE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE MORTGAGE.

[SIGNATURE PAGE FOLLOWS]

The undersigned Mortgagor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him/her at his/her address hereinbefore set forth.

Date:    November 12th, 2021

MORTGAGOR:
ELS DYNAMIC CONSULTING LLC
a Limited Liability Company

By: _____          By: _____
Name:    Edward L Spann IV               Name: _____
Title:    Member                         Title: _____


By: _____          By: _____
Name: _____          Name: _____
Title: _____          Title: _____

EXHIBIT A



**ALTA Commitment for Title Insurance**

ISSUED BY

**First American Title Insurance Company**

COMMITMENT NUMBER

# Exhibit A

Commitment No.: █████████

The Land referred to herein below is situated in the **County of Philadelphia, Commonwealth of Pennsylvania**, and is described as follows:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the City of Philadelphia, described according to a Plan and Survey made for Anton Roeger, Jr. by John H. Robinson, Surveyor and Regulator of the Sixth District dated September 29, 1958 as follows, to wit:

BEGINNING at a point on the Southwesterly side of Atlantic Street (forty feet wide) at the distance of ninety-seven feet, ten inches Southeasterly from the Southeasterly side of Eighteenth Street (fifty feet wide)

CONTAINING in front or breadth Southeastwardly along the said Southwesterly side of Atlantic Street twenty-five feet, and extending of that width in length or depth Southwestwardly between parallel lines at right angles to said Atlantic Street seventy feet.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alley and for a passage and watercourse at all times hereafter, forever.

BEING known as 1736 West Atlantic Street.

OPA NO. █████████

BEING the same premises which Nathan L. Warren, by Deed dated 03/19/2020 and recorded 04/06/2020 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Document No. 53655277, granted and conveyed unto ELS Dynamic Consulting, LLC.

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _Pennsylvania_ )
                                      )  ss
COUNTY OF _Bucks_ )

On _11/12/21_, before me, _Kenneth D. Federman_, a Notary Public, personally appeared _Edward L Quinn, IV member_
(Insert name and title exactly as they appear on signature page)
_ELS Dynamic Consulting LLC_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Pennsylvania_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public                                                    (Seal)

### MAIL TAX STATEMENTS AS DIRECTED ABOVE

Commonwealth of Pennsylvania - Notary Seal
KENNETH D. FEDERMAN, Notary Public
Bucks County
My Commission Expires June 10, 2024
Commission Number 1048460

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**
LOAN NO.: ███████



WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **AMRES CORPORATION** located at **30 MONTGOMERY ST. SUITE 215, JERSEY CITY, NJ 07302**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VERUS SECURITIZATION TRUST 2022-3** located at **500 DELAWARE AVE. 11TH FLOOR, WILMINGTON, DE 19801**, Assignee, its successors and assigns, that certain Mortgage dated **NOVEMBER 12, 2021** executed by **ELS DYNAMIC CONSULTING LLC**, Mortgagor, to **AMRES CORPORATION**, Original Mortgagee, in the amount of **$162,500.00** and recorded on **JANUARY 14, 2022** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **53944588**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **1736 W ATLANTIC STREET, PHILADELPHIA, PA 19140**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on ___AUG 16 2023___ .

**AMRES CORPORATION, BY NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY IN FACT, POWER OF ATTORNEY TO BE RECORDED HEREWITH**

_____
**JOSEPH COOPER, TEAM LEAD**

STATE OF **SOUTH CAROLINA**    COUNTY OF **GREENVILLE** ) ss.
On ___AUG 16 2023___, before me, ___Karen L Eaton___, personally appeared **JOSEPH COOPER** known to me to be the **TEAM LEAD** of **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AS ATTORNEY-IN-FACT FOR AMRES CORPORATION** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____
Karen L Eaton    **(COMMISSION EXP.**
_____ **)**
**NOTARY PUBLIC**

**Page 1 of 3**

I do hereby certify that the precise address of the Assignee Residence is:
**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VERUS SECURITIZATION TRUST 2022-3, 500 DELAWARE AVE. 11TH FLOOR, WILMINGTON, DE 19801**

_____

**JOSEPH COOPER, TEAM LEAD**

▉▉▉▉▉▉▉ELS DYNAMIC CONSULTING LLC

### LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, situate in the City of Philadelphia, described according to a Plan and Survey made for Anton Roeger, Jr. by John H. Robinson, Surveyor and Regulator of the Sixth District dated September 29, 1958 as follows, to wit:

BEGINNING at a point on the Southwesterly side of Atlantic Street (forty feet wide) at the distance of ninety-seven feet, ten inches Southeasterly from the Southeasterly side of Eighteenth Street (fifty feet wide)

CONTAINING in front or breadth Southeastwardly along the said Southwesterly side of Atlantic Street twenty-five feet, and extending of that width in length or depth Southwestwardly between parallel lines at right angles to said Atlantic Street seventy feet.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid alley and for a passage and watercourse at all times hereafter, forever.

<table>
<tr><td colspan="2">Fill in this information to identify your case and this filing:</td></tr>
</table>

**Fill in this information to identify your case and this filing:**

Debtor 1    **Edward**            **L.**            **Spann, IV**
            First Name        Middle Name        Last Name

Debtor 2
(Spouse, if filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    **Eastern**    District of    **Pennsylvania**

Case number    **24-13884**



☐ Check if this is an amended filing

# Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.    **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☑ Yes. Where is the property?

1.1    **100% owned by ELS Dynamic Consulting, LLC**
Street address, if available, or other description

**1736 W Atlantic Street**

**Philadelphia, PA 19140**
City        State        ZIP Code

**Philadelphia**
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

**Source of Value:** **Zillow 182,027 less 20% closing cost**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
**$145,622.00**            **$0.00**

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Fee Simple**

☐ **Check if this is community property** (see instructions)

If you own or have more than one, list here: